**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

RONNIE LEE SANDERS,

        Plaintiff,

vs.

JAMES MCKINNEY, KAREN ANDERSON, JANA HACKER, KRISTINE WEITZELL, TONY COMP, VICKI HARTLEY, KRISTINE PETERS, ANGIE SCHWERING, MICHELLE ENGELBRECHT, JENNY RUTHERFORD,

        Defendants.

No. C 12-3029-MWB

**MEMORANDUM OPINION AND ORDER REGARDING REPORT AND RECOMMENDATION**

_____

**TABLE OF CONTENTS**

*I.*    *INTRODUCTION*......................................................................*2*

*II.*   *ANALYSIS* .............................................................................*4*
    *A.*    *Standard of Review*............................................................*4*
    *B.*    *Discussion*.......................................................................*5*

*III.*  *CONCLUSION* ..................................................................... *11*

This case is before me on a Report and Recommendation (R&R) from Magistrate Judge Leonard Strand, filed on December 17, 2013 (docket no. 36). In the R&R, Judge Strand recommends that I grant summary judgment in favor of the defendants on plaintiff Ronnie Sanders's (Sanders's) § 1983 claim alleging that the defendants were deliberately indifferent to Sanders's medical needs, in violation of the Eighth Amendment. Sanders timely filed objections to the R&R (docket no. 37), to which the defendants have not

responded. For the reasons discussed below, I adopt the recommendations in the R&R and grant summary judgment in favor of the defendants.

## I. INTRODUCTION[1]

This case arises from an Iowa inmate's ongoing issues with blood in his stool. Plaintiff Sanders is an inmate at the Fort Dodge Correctional Facility (FDCF). Defendants are all employees of the Iowa Department of Corrections (DOC).

> At all relevant times: (a) defendant James McKinney was the Warden of FDCF, (b) defendant Kristine Weitzell was Assistant Deputy Director for the Iowa Department of Corrections in Des Moines, Iowa, (c) defendant Tony Comp was a Unit Manager at FDCF, (d) defendant Jana Hacker was a nurse practitioner at FDCF, (e) defendant Karen Anderson was a nursing supervisor at FDCF and (f) defendants Vicki Hartley, Kristin Peters, Angie Schwering, Michelle Engelbrecht, and Jenny Rutherford were all nurses at FDCF.

(Docket no. 36, at 2-3).

Sanders began serving time at FDCF in June of 2009. In December of 2009, he began seeking medical care at FDCF for blood in his stool. Over the next two years, Sanders repeatedly sought care for the same issue. Each time Sanders sought medical care, he received it, either from a doctor or from one of the defendant nurses. These medical professionals routinely examined Sanders following his complaints, diagnosed him at different times with hemorrhoids, constipation, an anal fissure, or no abnormality, and prescribed him laxatives, hydrocortisone suppositories, acetaminophen, hemorrhoid suppositories, and nitroglycerine ointment. In December of 2011, Sanders requested to see a specialist about his condition. Defendants did not procure a specialist, but Sanders received a rectal exam a few days later, which revealed no abnormalities.

---

[1] Judge Strand thoroughly summarized this case's facts in the R&R (docket no. 36). Sanders does not object to the factual findings in the R&R; he only objects to the legal conclusions. Thus, I will not restate the facts here with the same detail as the R&R.

Unhappy with his medical care, Sanders pursued an informal grievance and two formal grievances in which Sanders complained about having to purchase certain medications from the commissary, and stated that he wanted to see a specialist. When these grievances were not resolved to Sanders's satisfaction, he filed this lawsuit *pro se*[2] under 42 U.S.C. § 1983, essentially claiming that the defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment (docket no. 3).

On September 20, 2013, defendants moved for summary judgment (docket no. 27). I referred this case to Judge Strand for an R&R, which he filed on December 17, 2013 (docket no. 36). In the R&R, Judge Strand recommends that I grant summary judgment in favor of the defendants. In particular, Judge Strand found the following:

(1) Sanders failed to produce sufficient evidence that the defendants were deliberately indifferent to Sanders's serious medical needs, and thus cannot sustain his § 1983 claims;

(2) Sanders's claims are not barred by 42 U.S.C. § 1997e(a);

(3) Sanders's claims are not barred by 42 U.S.C. § 1997e(e);

(4) Sanders failed to state a factual basis for his claims against defendants Weitzell and Comp, independently entitling them to summary judgment;

(5) Defendant McKinney cannot be held liable on a respondeat superior theory, and is therefore entitled to summary judgment;

(6) To the extent Sanders's complaint suggests that defendants Anderson, McKinney, and Weitzell violated Sanders's due process rights, those claims should be dismissed; and

---

[2] Judge Strand later appointed counsel to represent Sanders (docket no. 19).

(7) Defendants are entitled to qualified immunity.

On December 30, 2013, Sanders filed objections to the R&R (docket no. 37). Sanders only objects to Judge Strand's findings regarding (1), (6),[3] and (7) above. I must now determine whether to adopt Judge Strand's recommendations in light of Sanders's objections.

## II. ANALYSIS

### A. Standard of Review

I review Judge Strand's R&R under the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28. U.S.C. § 636(b)(1) (2006); *see* Fed. R. Civ. P. 72(b) (stating identical requirements); N.D. Ia. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the

---

[3] Sanders only objects to issue (6) insofar as he claims that "Anderson [knew] of [Sanders's] serious medical condition, and . . . has not done what is necessary to determine the source of [Sanders's] bleeding" (docket no. 37, at 8). Because this is an argument about Anderson's potential deliberate indifference to Sanders's medical needs, I will address it as part of Sanders's objection to issue (1).

4

> district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, I may review *de novo* any issue in a magistrate judge's report and recommendation at any time. *Id.* If a party files an objection to the magistrate judge's report and recommendation, however, I *must* "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, I am not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150. Thus, I need only review for "clear error" the portions of the R&R to which there are no objections. *See* Fed. R. Civ. P. 72 advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

### B. Discussion

Sanders objects to Judge Strand's conclusion that Sanders cannot establish an Eighth Amendment violation because there is insufficient evidence that the defendants were deliberately indifferent to Sanders's serious medical needs. The Eighth Amendment, applied to the states by the Fourteenth Amendment, prohibits cruel and unusual punishment. U.S. Const. amend. VIII; *see also Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 463 (1947) (plurality opinion) (incorporating against the states the Eighth Amendment's prohibition of cruel and unusual punishment). A prison official violates an inmate's Eighth Amendment rights if the official is deliberately indifferent to the inmate's serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Here, the parties agree that Sanders's bloody stool is a serious medical need. The only issue on summary judgment is whether the defendants were deliberately indifferent to that need.

"[D]eliberate indifference entails something more than mere negligence . . . ." *Id.* at 835. Rather, the evidence "must show a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." *Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006) (citations omitted). A prison official does not offend the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Stated differently, "the evidence must show that the officers recognized that a substantial risk of harm existed *and* knew that their conduct was inappropriate in light of that risk." *Krout v. Goemmer*, 583 F.3d 557, 567 (8th Cir. 2009) (citations omitted). Even if officers know that a prisoner's medical condition poses a substantial risk, "the officers may be found free from liability if they respond[] reasonably to the risk, even if the harm ultimately was not averted." *Id.* (quoting *Farmer*, 511 U.S. at 844) (internal quotation marks omitted). And "[e]ven if an official acts unreasonably in failing to take particular measures . . . reasonableness is a negligence standard, and negligence cannot give rise to a deliberate indifference claim." *Id.* (citations and internal quotation marks omitted).

In his objections, Sanders only argues that defendants Hacker and Anderson were deliberately indifferent to his medical needs. Specifically, Sanders claims that "Hacker and Anderson are deliberately indifferent to [Sanders] because they acknowledge that there are many medical reasons as to why a person may be passing blood in the stools yet have done nothing to find the source of the bleeding" (docket no. 37, at 4). Sanders also claims that Hacker and Anderson should have procured a specialist for Sanders to determine whether Sanders had "ulcers, tumors [or] pre-cancerous matters," which are "beyond [Hacker's and Anderson's] expertise" (docket no. 37, at 4).

6

Neither the record nor the law supports Sanders's argument. To start, the record does not support the claim that the defendants "have done nothing to find the source of [Sanders's] bleeding." To the contrary, Sanders received treatment from a doctor or nurse each time he sought medical care, and that treatment led to diagnoses of hemorrhoids, constipation, an anal fissure, or no abnormalities. The record similarly does not support the suggestion that Sanders suffered from "ulcers, tumors, [or] pre-cancerous matters." There is simply no medical evidence that Sanders actually had these hypothetical conditions, or even that he *likely* had them.

Sanders's argument, then, appears to be based on select portions of Hacker's deposition[4] in which Hacker notes the *possibility* that other conditions can cause bloody stool. Hacker testified as follows:

> Q: How about any sort of tumors or pretumor cells in the colon, would they potentially cause blood?
>
> A: Possibly.
>
> Q: Okay. Would a diagnosis of potential cancerous cells in the colon, would that be outside your scope of practice for purposes of diagnosing that?
>
> A: Yes.

---

[4] Sanders also appears to rely on materials printed from the website WebMD.com, which are attached to his objections, listing conditions that may cause bloody stool. These printed web pages are of little use to Sanders for two reasons. First, they establish no more than what Hacker's testimony establishes—that there are medical conditions, other than those diagnosed in Sanders, that can cause bloody stool. As I note below, such evidence is insufficient to support an alleged Eighth Amendment violation. Second, even if the information helped Sanders, it is hearsay, which I cannot consider in ruling on a motion for summary judgment. *See Fin. Timing Publications, Inc. v. Compugraphic Corp.*, 893 F.2d 936, 942 (8th Cir. 1990) ("A party may not rely solely on inadmissible hearsay in opposing a motion for summary judgment, but instead must show that admissible evidence will be available at trial to establish a genuine issue of material fact.").

7

(Docket no. 34-3, at 29). But Hacker rejected the notion that Sanders suffered from anything more serious than hemorrhoids:

> Q: And I guess my question again is, based upon his symptoms of this occurring for over two years, could this have been or could this be something much more serious or different than hemorrhoids and anal fissure?
>
> A: He had no other complaints besides the alleged blood in the stools. He had no weight loss, he had no change of appetite, he had no abdominal pain, he had no frank bleeding, he had no hemoccult emesis that would lead us to believe he had anything further going on than hemorrhoids.
>
> Q: So what you're saying is it can be something more serious, but there were other factors that you took into consideration that kind of negated what you believed could be more serious?
>
> A: Correct.

(Docket no. 34-3, at 34-35).

Hacker's testimony is not evidence of deliberate indifference. Recognizing that there are medical conditions, other than hemorrhoids, that could hypothetically cause bloody stool is far different from knowing that Sanders had "an excessive risk" of those conditions and then knowingly disregarding that risk. *See Farmer*, 511 U.S. at 837 ("the official [must] know[] of and disregard[] an excessive risk to inmate health or safety"). Simply put, there is no evidence that Hacker, or any other defendant, subjectively "dr[e]w the inference" that Sanders had a condition more serious than hemorrhoids, *id.*, much less that the defendants "knew that their conduct was inappropriate" in treating Sanders. *Krout*, 583 F.3d at 567. In fact, the record suggests the opposite—that the defendants had reason *not* to infer that Sanders had a specialist-worthy condition given that Sanders "had no weight loss, he had no change of appetite, he had no abdominal pain, he had no frank bleeding, he had no hemoccult emesis that would lead [them] to believe [Sanders] had anything further going on than hemorrhoids" (docket no. 34-3, at 34). Even

assuming that Hacker or Anderson should have procured a specialist, their failure to do so would be, at most, evidence of negligence, which cannot sustain an Eighth Amendment claim. *Krout*, 583 F.3d at 567.

At bottom, Sanders's claim stems from his personal desire to see a specialist. While this desire is understandable, "[a] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010) (quoting *Taylor v. Bowers,* 966 F.2d 417, 421 (8th Cir. 1992), *overruled on other grounds by Randle v. Parker*, 48 F.3d 301, 304 (8th Cir. 1995)). "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment." *Id.* (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1240 (8th Cir. 1997)). The Eighth Amendment does not afford prisoners the right to choose their own doctors, nor does it promise successful treatment of ongoing medical issues. It simply proscribes prison officials' deliberate indifference in the face of a prisoner's serious medical needs. There is insufficient evidence to meet that standard here.

Sanders also argues that "[t]he Defendant[s'] recognition of a long, chronic medical condition without providing the necessary medication, whether prescriptive or non-prescriptive, is deliberate indifference" (docket no. 37, at 5). There is no evidence in the record that the defendants failed to prescribe necessary medication, much less that they recklessly failed to do so. There is evidence that the defendants directed Sanders to purchase certain medications and remedies from the prison commissary, which Sanders did not do despite his ability to pay for them. Sanders cites no authority suggesting that the defendants violated the Eighth Amendment by not buying for Sanders remedies available at the commissary.

Based on the analysis above, I agree with Judge Strand's finding that Sanders has failed to produce sufficient evidence of an Eighth Amendment violation. That alone is reason enough to adopt the R&R and grant summary judgment in favor of the defendants. But, alternatively, I agree with Judge Strand's conclusion that, even if Sanders could establish a constitutional violation, the defendants would still be entitled to qualified immunity. A state official is entitled to qualified immunity from a § 1983 suit unless he or she violates a plaintiff's "clearly established" constitutional rights. *Pearson v. Callahan*, 555 U.S. 223, 243-44 (2009). A right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In other words, a defendant officer must have "fair warning" that his or her conduct violates the Constitution. *Hope v. Pelzer*, 536 U.S. 730, 740 (2002).

Even if the defendants had violated Sanders's constitutional rights, those rights were not so clearly established on this record that the defendants would have had "fair warning" that they were violating the Eighth Amendment. A prisoner's Eighth Amendment claim based on a prison official's failure to procure a medical specialist is "actionable only in cases where the need for . . . a medical specialist is obvious." *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006). As Judge Strand correctly noted: "The evidence here does not establish an obvious need for a specialist. Sanders has a known history and diagnosis of hemorrhoids and no symptoms or test results suggested that Sanders's condition could be something more serious that would require a specialist's expertise" (docket no. 36, at 25). Given the medical evidence and testimony discussed above, it would not have been sufficiently clear to the defendants that Sanders had a constitutional right to see a specialist. The defendants would therefore be entitled to qualified immunity from Sanders's Eighth Amendment claims.

Finally, after reviewing the remaining portions of the R&R, to which Sanders did not object, I find no clear error and thus adopt the rest of Judge Strand's analysis.

### III. CONCLUSION

For the reasons discussed above, I adopt the recommendations in the R&R. The defendants' motion for summary judgment (docket no. 27) is granted, and Sanders's claims are dismissed with prejudice. The Clerk shall enter judgment in favor of the defendants and against Sanders.

**IT IS SO ORDERED**.

**DATED** this 11th day of March, 2014.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA